# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.G.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ABC UNIFIED SCHOOL DISTRICT,<br><br>　　　　　　Defendant. | Case No. CV 13-06929-DMG (RZx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This matter is before the Court following a bench trial which took place on June 17, 2014. Tania L. Whiteleather appeared on behalf of Plaintiff, N.G. Marlon C. Wadlington and Kristin M. Myers appeared on behalf of Defendant, ABC School District.

Having carefully reviewed the evidence and the arguments of counsel, as presented at trial and in their written submissions, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

# I.

# **FINDINGS OF FACT**

1. N.G. is a student who receives special education services due to a diagnosis of Emotional Disturbance. (Administrative Record ("AR") V. 2 pg. 371; V.3 512.)

2. In October 2012, the Department of Children and Family Services ("DCFS") placed N.G. at College Hospital, where she remained until March 26, 2013. (AR V. 2 pg. 400.) Her placement at College Hospital was a "medically necessary placement," as opposed to an educational placement. (AR V. 4 pg. 965:12-22.)

3. College Hospital is within the geographical boundaries of ABC Unified School District ("the District"). (AR V. 2 pg. 400.)

4. On November 15, 2012, the District held its first individualized education program ("IEP") team meeting for N.G., in which it offered to provide N.G. specialized academic instruction. (AR V.2 pg. 337-57.) The District also offered to conduct an Educationally Related Mental Health Services ("ERMHS") assessment and a Functional Analysis Assessment ("FAA"). (AR V. 2 pg. 354-55.)

5. Sometime in December 2012, N.G.'s treating psychiatrist determined it was no longer medically necessary for N.G. to remain at College Hospital. (AR V. 4 pg. 1007: 9-14.) A court order provided N.G. could not be discharged, however, until all pending educational assessments were completed. (AR V. 4 pg. 1141:1-5.)

6. On December 18, 2012, the District convened another IEP team meeting to review the results of the FAA and ERMHS assessments. (AR V. 2 pg. 379-82.) The ERMHS assessment concluded that "Residential Placement appears to be the least restrictive environment (LRE) to meet [N.G.'s] educational needs at this time." (AR V. 2 pg. 377.) As a result, the District recommended a Residential Treatment Center placement ("RTC"). (V. 3 pg. 532.)

7. On January 15, 2013, the IEP team held a third meeting. (AR V. 3 pg. 534-37.) The team agreed that upon discharge from College Hospital, N.G. should be placed in an RTC, which is reflected in the January 15, 2013 IEP. (AR V. 2 pg. 400.) The District, however, did not offer N.G. an RTC placement. (*Id.*) Instead, DCFS offered to place N.G. in an RTC funded by DCFS. (AR V. 3 pg. 535; AR V. 4 pg. 730:14-731:1-6.) N.G.'s guardian *ad litem*, Patrice Vance, refused DCFS's RTC offer because she did not think it was a good fit for N.G. (AR V. 4 pg. 918:23-24.)

8. At the January 15, 2013 IEP meeting, the District informed N.G.'s guardian that it would not be the local education agency ("LEA") responsible for placing N.G. upon her discharge from College Hospital. (AR V.3 pg. 535.) It recommended that she contact her home district to commence N.G.'s placement process.

9. During the time N.G. was at College Hospital, her guardian resided in the attendance area of the Chino Valley Unified School District. (AR V.4 at 698; 736:17-22; 1154:14-17.)

10. On February 14, 2013, N.G.'s guardian filed a due process complaint against the District for failing to offer N.G. an RTC placement upon her discharge from College Hospital. (Administrative Record ("AR") V.1 pg. 1-17.)

11. On March 26, 2013, the guardian transferred N.G. to an RTC in Texas. (AR V. 4 pg. 948:9-18.)

12. That same day, N.G.'s guardian first contacted Chino Valley Unified School District to have her enrolled. (AR V. 4 pg. 944:24-947:12.)

13. N.G. is now enrolled in Chino Valley Unified School District. (AR V. 4 pg. 946:4-5.) Her placement at Devereux, an RTC in Texas, was initially funded through Garvey School District and Alhambra High School District based on settlement agreements. (AR V. 4 pg. 948:16-21; pg. 956:8-21.) Her current placement is funded by Chino Valley Unified School District.

14. The due process hearing was held on May 15, 16, and 20, 2013. (AR V. 1 pg. 323.) The ALJ held that the District did not deny N.G. a free appropriate public education ("FAPE") during the January 15, 2013 IEP by failing to offer her placement in an RTC. (AR V. 1 pg. 324, 332.)[1]

15. On September 25, 2013, N.G. filed a Complaint in this Court against the District. [Doc. # 3.] The parties filed their opening trial briefs on April 11, 2014. [Doc. ## 22, 23.] N.G. also filed a request for judicial notice. [Doc. # 24.][2] The parties filed their response briefs on May 9, 2014. [Doc. ## 25, 26.]

16. At the hearing, the parties agreed that the sole issue before this Court is the same issue identified by the ALJ (AR V. 1 pg. 332): Whether the District denied N.G. a FAPE during the January 15, 2013 IEP by failing to offer her placement in an RTC.

## II.

## CONCLUSIONS OF LAW

1. IDEA guarantees a FAPE to children with disabilities. *Doug C. v. Hawaii Dept. of Educ.*, 720 F.3d 1038, 1043 (9th Cir. 2013). "The IDEA ensures that 'all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living.'" *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 432 (9th Cir. 2010) (quoting 20 U.S.C. § 1400(d)(1)(A)). "To accomplish this goal, the statute 'provides federal funds to assist state and local agencies in educating children with disabilities, but conditions such

---

[1] The ALJ also determined that the District did not have an obligation to invite potential prospective districts to the IEPs. (AR V. 2 pg. 332.) At oral argument, counsel for N.G. confirmed that this issue is not on appeal. *See also* Plaintiff's Responsive Brief pg. 9 [Doc. 25] ("The ALJ properly found that the District did not have to invite any other 'prospective' districts to N.G.'s IEPs.")

[3] 34 C.F.R. § 300.104 provides: "If placement in a public or private residential program is necessary to provide special education and related services to a child with a disability, the program, including non-medical care and room and board, must be at no cost to the parents of the child."

funding on compliance with certain goals and procedures.'" *County of San Diego v. California Special Education Hearing Office*, 93 F.3d 1458, 1461-62 (9th Cir. 1996) (quoting *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993)).

## **Standard Of Review**

2.  While the Ninth Circuit has construed review of IDEA cases to be *de novo*, *see Union School Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994), it has determined that "[c]omplete *de novo* review . . . is inappropriate." *Amanda J. ex. rel. Annette J. v. Clark County Sch. Dist.,* 267 F.3d 877, 887 (9th Cir. 2001). Rather, the Ninth Circuit has stressed that "Congress intended states to have the primary responsibility of formulating each individual child's education" and therefore courts "must defer to their 'specialized knowledge and experience' by giving 'due weight' to the decisions of the states' administrative bodies." *Id.* (citing *Hendrick Hudson Cent. Sch. Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 181, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982) ("Rowley"). Courts are not free "to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206. The Ninth Circuit has explained:

> It is hard to see what else the district court could do as a practical matter under the statute except read the administrative record, consider the new evidence, and make an independent judgment based on a preponderance of evidence and giving due weight to the hearing officer's determinations. The district court's independent judgment is not controlled by the hearing officer's recommendations, but neither may it be made without due deference.

*Capistrano Unified Sch. Dist. v. Wartenberg By & Through Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995); *see also R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007).

### The ALJ's Decision is Entitled to Due Deference

3. The level of deference the Court should provide the ALJ's decision "is a matter of discretion of the courts." *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987). District courts should give more deference to a state administrative agency where the ALJ's decision is "thorough and careful," *R.B.*, 496 F.3d at 942 (quoting *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994)), and when it evinces "careful, impartial consideration of all the evidence and demonstrates his [or her] sensitivity to the complexity of the issues presented." *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (quoting *County of San Diego v. California Special Educ. Hrg. Off.*, 93 F.3d 1458, 1466 (9th Cir. 1996)). An administrative decision is "thorough and careful" when "the officer participates in the questioning of witnesses and writes a decision 'contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions.'" *R.B.*, 496 F.3d at 942 (citing *Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1031 (9th Cir. 2006)).

4. Here, the ALJ participated in the questioning of witnesses during a hearing that lasted three days. The ALJ also wrote a 10-page opinion that cited relevant details from the factual record. The ALJ's opinion reviews the legal standards governing claims under the IDEA, analyzes the issues and arguments presented, and supports conclusions with citations to factual findings. Therefore, the ALJ's decision deserves particular deference. *See R.B.*, 496 F.3d at 942.

### The Burden of Proof is on N.G.

5.      The party challenging the administrative decision in district court bears the burden of persuasion on each claim challenged. *Clyde K. v. Puyallup Sch. Dist., No. 3*, 35 F.3d 1396, 1399 (9th Cir. 1994), *superseded by statute on other grounds*.

**General Residency Requirements Regarding a Student's Local Educational Agency**

6.      Under IDEA, the local educational agency ("LEA") is generally responsible for providing a FAPE to students with disabilities within its jurisdiction. 20 U.S.C. § 1414(d)(2)(A). An LEA includes a "school district, a county office of education, a charter school participating as a member of a special education plan area, or a special education local plan area (SELPA)." Cal. Educ. Code § 56026.3.

7.      In California, the general rule is that the school district responsible for the education of a child between the ages of six and 18 is the district in which the child's "parent or legal guardian" resides. *Katz v. Los Gatos–Saratoga Joint Union High Sch. Dist.*, 117 Cal. App. 4th 47, 11 Cal. Rptr. 3d 546, 553 (2004) ("Section 48200 embodies the general rule that parental residence dictates a pupil's proper school district.").

8.      Cal. Educ. Code § 48204(a) provides that residency in a particular LEA is also established if the student is in a licensed children's institution ("LCI"), foster home, or family home in the district; if the student is subject to an interdistrict transfer; if the student is emancipated and lives in the LEA; if the student lives in a home of a caregiving adult in the district; or if the "pupil resid[es] in a state hospital located within the boundaries of that school district."

**The District Did Not Violate IDEA by Failing to Offer an RTC Placement During the January 15, 2013 IEP**

9.      The LEA where a psychiatric hospital is located is educationally responsible for a student who is a patient. Cal. Educ. Code § 56167(a) provides:

-7-

> "Individuals with exceptional needs who are placed in a public hospital, state licensed children's hospital, psychiatric hospital, proprietary hospital, or a health facility for medical purposes are the educational responsibility of the local educational agency in which the hospital or facility is located, as determined in local written agreements pursuant to subdivision (e) of Section 56195.7."

Both parties agree that Section 56167(a) required the District to provide N.G. a FAPE while she was at College Hospital. This statute does not impose any obligations on the District to provide N.G. with an educational benefit upon her discharge.

10. Cal. Educ. Code § 56167.5 clarifies that a placement at a psychiatric hospital is not a "necessary residential placement" that the LEA is responsible for as part of an educational program:

> Nothing in this article shall be construed to mean that the placement of any individual with exceptional needs in a hospital or health facility constitutes a necessary residential placement, as described under Section 300.104 of Title 34 of the Code of Federal Regulations,[3] for which the local educational agency would be responsible as an educational program option under this part.

Cal. Educ. Code § 56167.5.

---

[3] 34 C.F.R. § 300.104 provides: "If placement in a public or private residential program is necessary to provide special education and related services to a child with a disability, the program, including non-medical care and room and board, must be at no cost to the parents of the child."

-8-

11. The only case law construing Cal. Educ. Code sections 56167 and 56167.5 cited by the parties, and that the Court could find, supports the ALJ's conclusion.[4] In *Student v. OCDE*, OAH No. 2006100050 (2007), a school district similarly contended that it was only responsible for providing educational services to the student while he was hospitalized in a private psychiatric hospital within the district, citing Cal. Educ. Code sections 56167 and 56167.5. The ALJ agreed. It concluded that the district was "only responsible for providing educational services while Student was hospitalized at Gateways Hospital and is not the LEA responsible for implementing Student's IEP and/or funding his placement at the RTC" after discharge. On appeal, the Ninth Circuit held that "as a matter of California law . . . the California agency responsible for funding a special education student's education at an out-of-state residential treatment facility is the school district in which the student's parent, as defined by California Education Code section 56028, resides." *Orange Cnty. Dep't of Educ. v. California Dep't of Educ.*, 668 F.3d 1052, 1053 (9th Cir. 2011). Neither the Ninth Circuit nor the district court reviewed the relevant part of the OAH's decision regarding Sections 56167 and 56167.5. *Id.*; *Orange Cnty. Dep't of Educ. v. A.S.*, 567 F. Supp. 2d 1165 (C.D. Cal. 2008) *aff'd in part, rev'd in part and remanded sub nom. Orange Cnty. Dep't of Educ. v. California Dep't of Educ.*, 668 F.3d 1052 (9th Cir. 2011). But the Ninth Circuit did find, on the basis of nearly identical facts, that the entity responsible for funding a student's RTC placement upon discharge from a psychiatric hospital is the school district where the parent/guardian resides. Thus, the Court concludes that the ALJ was correct in construing Cal. Educ.

---

[4] During oral argument, N.G.'s counsel cited several cases involving students detained at juvenile hall and then released into an RTC. She did not cite these cases in her pleadings before this Court, and OAH cases are not controlling. Regardless, as the ALJ noted, these cases are materially distinguishable from the case at bar. (AR V. 2 pg. 331 ¶ 18 & n.1.) Notably, they did not involve a student in a temporary medical placement receiving education by a district in the hospital's jurisdiction under Cal. Educ. Code § 56167(a). (*Id.*)

Code section 56167 to mean that the District's responsibility to N.G. extended only to the time when she resided at College Hospital.

12. Other statutory provisions also support the ALJ's conclusion. Cal. Gov't Code § 7579.1 provides that prior to the discharge of a disabled child with an "active individualized education program" from a hospital:

> The operator of the hospital or medical facility, or the agency that placed the child in the licensed children's institution or foster family home, shall, at least 10 days prior to the discharge of a disabled child or youth, notify in writing the local educational agency in which the special education program for the child is being provided, and the receiving special education local plan area where the child is being transferred, of the impending discharge.

Cal. Gov't Code § 7579.1(a)(1). The language regarding both the current and future LEA suggests an intent by the legislature not to require the LEA where the hospital is located to provide an education to the student upon discharge, unless the parent or guardian resides within the jurisdiction of that LEA. Section 7579.1(a)(1) provides:

> (b) Once the disabled child or youth has been discharged, it shall be the responsibility of the receiving local educational agency to ensure that the disabled child or youth receives an appropriate educational placement that commences without delay upon his or her discharge from the hospital, institution, facility, or foster family home in accordance with Section 56325 of the Education Code. *Responsibility for the provision of special education rests with the school district of residence of the parent or guardian of the child unless the child is placed*

> *in another hospital, institution, facility, or foster family home in which case the responsibility of special education rests with the school district in which the child resides pursuant to Sections 56156.4, 56156.6, and 56167 of the Education Code.*

Cal. Gov't Code § 7579.1(b) (emphasis added). Accordingly, upon discharge from a hospital, the student's LEA is presumptively that district in which her parent/guardian resides—not that of the hospital. Nothing in Cal. Gov't Code § 7579.1(a) or (b), particularly when read in conjunction with Cal. Educ. Code sections 56167 and 56167.5, suggests that the LEA within the jurisdiction of the psychiatric hospital would be required to make an offer of an RTC upon discharge.

13. N.G. conceded at oral argument that an offer of an RTC placement is tantamount to funding the placement. Thus, N.G.'s reading of Cal. Educ. Code section 56167 has the consequence of requiring a district which funds a temporary, non-educational, medical placement in a hospital to fund an educational RTC placement upon discharge from the hospital—even where the student has no other connection to the District.[5] There is no indication that the legislature intended such a consequence when drafting Section 56167. N.G. contends that the District could have been reimbursed if it funded the RTC, citing Cal. Gov. Code § 7585:

> (a) Whenever a department or local agency designated by that department fails to provide a related service or designated instruction and service required **pursuant to Section 7575**, and

---

[5] Although neither party asserted that this case is moot, the Court considered the issue *sua sponte* given Chino Hills School District's current funding of N.G.'s RTC placement. The parties agree that had the District offered N.G. an RTC placement, it would have funded it for at least some period of time. Therefore, as a remedy for the cost of the RTC placement is still available against the District, the issue before the Court is not moot. Notwithstanding N.G.'s contention at oral argument, "[t]he existence of an attorneys' fees claim . . . does not resuscitate an otherwise moot controversy." *Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir. 1996) (citing *Diamond v. Charles*, 476 U.S. 54, 70–71, 106 S.Ct. 1697, 1707–08, 90 L.Ed.2d 48 (1985); *United States v. Ford*, 650 F.2d 1141, 1143–44 (9th Cir. 1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982)).

> specified in the pupil's individualized education program, the parent, adult pupil, if applicable, or a local educational agency referred to in this chapter, shall submit a written notification of the failure to provide the service to the Superintendent of Public Instruction or the Secretary of California Health and Human Services.

Cal. Gov't Code § 7585 (emphasis added). Section § 7575, however, refers to "occupational therapy and physical therapy." Section 7585 therefore does not provide for reimbursement in this context, and N.G. does not point to any other authority in support of the proposition that reimbursement is available.

14. Cal. Gov't Code § 7585, when considered alone and in the context of the other applicable statutes, does not evidence an intent by the legislature to require the District to pay for N.G.'s education upon discharge. DCFS placed N.G. at College Hospital on a medical placement and paid for her stay. N.G.'s reading of applicable law would require the District to begin funding N.G. upon discharge—when it had no such obligation to do so before.

15. N.G. argues that the District's reading of applicable law renders students who are being discharged from a hospital incapable of receiving a needed offer of an RTC from any LEA. She points out that at the time of her January 15, 2013 IEP, no LEA was responsible for her education except for the District. Yet, Cal. Gov't Code § 7579.1 provides for students in N.G.'s position by identifying (1) which LEA is responsible for a student upon discharge from a hospital and (2) what its obligations are to the student. As stated above, Cal. Gov't Code § 7579.1(b) provides that "[r]esponsibility for the provision of special education rests with the school district of residence of the parent or guardian of the child unless the child is placed in another hospital, institution, facility, or foster family home in which case the responsibility of special education rests with the school district in which the child resides . . . ." Thus, Chino Hills was presumptively responsible for implementing the January 15, 2013 IEP upon N.G.'s discharge from

-12-

College Hospital, unless N.G.'s guardian agreed to a DCFS placement elsewhere, in which case the LEA responsible for that geographic region would be responsible.

16. Cal. Gov't Code § 7579.1(b) also provides that, upon a student's discharge from a hospital, the receiving LEA must "ensure that the disabled child or youth receives an appropriate educational placement that commences without delay upon his or her discharge from the hospital." Thus, the receiving LEA was required to provide N.G. an appropriate educational placement.

17. The administrative record and case law do not establish that the District denied N.G. a FAPE. The ALJ's decision is entitled to deference.

## III.
## CONCLUSION

In light of the foregoing, the Court affirms the decision of the ALJ and directs entry of judgment in the District's favor.

DATED: September 19, 2014

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE